PAMELIA A. PRESBREY *vs.* JAMES L. PRESBREY & another.

A deed to A. of "one undivided half of a certain lot of land and one undivided half of the buildings, being the lower tenement in said house thereon situated," with further descrip-tions of the boundaries of the land, and a deed to B. in terms precisely similar, except the substitution of the words "upper tenement" in place of "lower tenement," will make A. and B. tenants in common of the premises, and the words referring to the lower and upper tenements are to be rejected for repugnancy.

One tenant in common may maintain a process against his co-tenant, under Gen. Sts. c. 137, for forcible entry and detainer.

ACTION under Gen. Sts. *c.* 137, to recover possession of two rooms in the third story of a certain building in Taunton. The action was removed by consent to the superior court.

At the trial, before *Brigham,* J., the plaintiff, to prove her case put in evidence a warranty deed dated December 3d 1862 from John O. Presbrey to herself, of " one undivided half of a certain lot of land and one undivided half of the buildings, being the lower tenement in said house thereon situated," with further descriptions of the boundaries of the land. Said John O. Presbrey on the same day executed to one of the defendants a deed in terms precisely similar, except the substitution of the words " upper tenement " in place of " lower tenement." The plaintiff offered to show that the lower tenement comprised certain rooms, including one room into which the defendants afterwards forcibly entered, and removed the plaintiff's furniture therefrom, and have since forcibly detained from her. The judge ruled that the deeds constituted the parties tenants in common of all the land and buildings described therein, and that the Gen. Sts. *c.* 137, would not authorize the plaintiff to bring this form of action against the defendants.

A verdict was thereupon returned for the defendants, and the plaintiff alleged exceptions.

*J. Brown & C. A. Reed,* for the plaintiff, cited, upon the construction of the two deeds, *Gay* v. *Walker,* 36 Maine, 54; *Griswold* v. *Johnson,* 5 Conn. 363; Broom's Max. (3d ed.) 482, and cases cited; and to the point that, even if the parties were tenants in common, this process would lie, *Keay* v. *Goodwin,* 16 Mass. 1; *Otis* v. *Smith,* 9 Pick. 297; *Porter* v. *Hooper,* 13 Maine, 28; *Colburn* v. *Mason,* 25 Maine, 434; 2 Greenl. Ev. § 318.

*E. H. Bennett,* for the defendants.

BIGELOW, C. J. No doubt can be entertained of the true construction of the deeds under which the parties respectively claim title to the premises in controversy. By the grant of " one un divided half of a certain lot of land," and " one undivided half of the buildings thereon situated," with a particular description of the entire lot or parcel of land by metes and bounds, an

estate in common passed to the grantees. The language is apt and appropriate to convey such an estate; it is that usually adopted in grants of lands held or to be held in common ; and it is clear and unambiguous in its import. Indeed, the grant could hardly be made in a form more explicit. If the deed had merely conveyed one half of the entire parcel of land and of the house, it would have created a tenancy in common. *Hapgood* v *Whitman*, 13 Mass. 464. *Child* v. *Wells*, 13 Pick. 121. *Cheshire* v. *Shutesbury*, 7 Met. 566. But the grant is made still more definite by the use of the words " undivided half," applied both to the land and the buildings, which are susceptible of no intelligible interpretation other than as a grant of the moiety of the whole parcel, to be held in common with the owner of the other half. The additional clause, " being the lower tenement in said house," which follows the words already cited, is repugnant and irreconcilable with the other portion of the grant, and must be rejected. It can have no force or effect except as creating an estate in severalty in a portion of the house and of the land under it. But this is inconsistent with the residue of the description. It is therefore to be regarded as *falsa demonstratio*, and without effect.

If the whole description in a deed, taken together, cannot stand, then general words and sweeping clauses which are inconsistent with other specific and particular portions of the grant are to be disregarded. The doctrine on this point is fully stated in *Tyler* v. *Hammond*, 11 Pick. 193, 212, and *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15, 27. In this last case the authorities are fully collected. The rule is of general application, that when a deed defines with reasonable certainty the estate or interest which was intended to pass, a subsequent addition to the description, of general words which cannot be reconciled with preceding clauses, is to be considered as having been inserted by mistake, and is to have no effect on that part of the deed which is capable of a clear and definite interpretation.

This view of the construction of the deeds was adopted at tne trial, and it was correctly held that the plaintiff was tenant in common with the defendant, who was grantee of the other

moiety of the land. But it was also held that, notwithstanding the plaintiff was seised of the premises in controversy *per my et per tout*, and entitled to a joint occupancy and possession thereof with the defendants, this process could not be maintained.

We are apprehensive that the learned judge before whom the case was tried was led to take this view of the rights of the parties by the intimation of an opinion by this court in *King* v. *Dickerman*, 11 Gray, 480, in regard to the right of one tenant in common to maintain a complaint under Gen. Sts. *c.* 137, against his co-tenant. But that was not a case of forcible entry or detainer. It was a suit by a landlord against his tenant, who was also tenant in common of a part of the premises. The doctrine referred to was not essential to the decision of this case, which was determined upon other satisfactory grounds; nor was it put forth as a positive statement of the law, based on an examination of the authorities, but only as an indication of opinion, founded on one or two considerations of a general nature.

However the rule may be where, as in that case, the process is brought by a lessor to evict a tenant for rent in arrear, or on the ground that his estate is determined, we are fully satisfied, after looking over the authorities touching proceedings in forcible entry and detainer, that the complaint may well be supported where a tenant in common is evicted or held out violently and with a strong hand by his co-tenant. The existing statute concerning forcible entry and detainer is substantially a reënactment of *St.* 1784, *c.* 8, which was preceded by a colonial statute of similar import. *St.* 13 Wm. III. *c.* 71. The provisions of both these last named acts, with some modifications, were taken from the statutes of England on the same subject, more especially from *St.* 8 Hen. VI. *c.* 9, and so far as they made provision for the restitution or "reseizing" of land and tenements forcibly entered or detained they did not essentially differ therefrom. Under these statute provisions it was early held by the English courts that a joint tenant or tenant in common might "offend against the purport of them, either by forcibly ejecting or forcibly holding out his companion, for, although the entry of such tenant be lawful, yet the lawfulness of his entry in no way excuses the

violence or lessens the injury done to his companion." 1 Hawk. c. 64, § 33. Dalton's Justice, 315. Bac. Ab. Forcible Entry and Detainer. The leading case in which this point was distinctly raised and decided is *The King* v. *Marrow*, Cas. Temp. Hardw. 164, where the previous cases are cited. And it seems to have been uniformly held that by the true interpretation of the statutes in England restitution of the premises might be awarded for one joint tenant or tenant in common against the other. These adjudications having been made prior to the separation from the mother country, and in relation to legislative provisions which were subsequently enacted by the general court of the colony, must be deemed to be an authoritative exposition of the meaning of the statute, and to have been adopted and acted upon when similar statutes were passed by the colonial legislature, more especially as they seem to be in themselves just and reasonable. *Commonwealth* v. *Churchill*, 2 Met. 118, 124. Upon careful consideration, we are unable to see any good ground for refusing to yield our assent to them.

Of course in such cases the remedy must be made to conform to the right or title of the party. The writ of restitution could not issue to restore the plaintiff to the possession of the whole estate, but only to such portion as it appeared on the trial that he was entitled to possess and enjoy. Nor would there be any practical difficulty in enforcing such process. The defendant could be removed by the officer from the exclusive possession of the premises, and the plaintiff put into joint possession with his co-tenant, as in the analogous case of the service of a writ of *habere facias* issued on a judgment on a writ of entry for an undivided portion of land and tenements under Gen. Sts. c. 134, § 10. There would seem, therefore, to be no sufficient reason for holding that this simple and speedy remedy should be denied to a tenant in common, who has been forcibly and with a strong hand ejected from or held out of all possession and enjoyment of the common estate.          *Exceptions sustained.*